HARRY C. BAIRD, Appellant, v. FORT DODGE, DES MOINES &
SOUTHERN RAILROAD COMPANY, Appellee.

No. 39867.

MARCH 11, 1930.

*Parsons & Mills* and *John W. Pendy*, for appellant.

*Dyer, Jordan & Dyer* and *Davis, McLaughlin & Hise*, for
appellee.

EVANS, J.—The defendant is an interurban railway, and
is operated wholly within this state. By transfers from other
railroads, however, it transacts considerable interstate transpor-
tation. On December 12, 1926, the defendant transported a
car of coal from Boone to the Farmers Elevator at Rockwell

City. This was an interstate shipment. The crew consisted of four employees, including the plaintiff as a brakeman. The car was duly spotted at Rockwell City on that day on the "team track." The purpose of the "team track" is to afford facility for the approach of teams and trucks, whereby the cars may be unloaded into wagons or trucks. So far as was apparent that day, such was the end of the transportation. On December 14th, the same crew brought a train to Rockwell City, and were charged with the duty of certain switching. A part of this switching duty was to move the car of coal so that it could be unloaded into the consignee's Bin No. 10. Whether prior to this time it had been partly unloaded into wagons or trucks, does not appear. Whether it should have been spotted at Bin No. 10 on December 12th does not appear. In the process of switching on December 14th, it became necessary to move several empty cars, in order to gain access to the car of coal. For that purpose, the motor backed from the main track down the "team track," and connected with the cars thereon, for the purpose of moving the same. In the course of this process, and while moving towards and on the main track, the trolley left the trolley wire, and before the train could be stopped, the trolley pole had come in contact with two mast arms, and had broken them or disengaged them from their connection, the mast arm still being connected with the trolley wire. This resulted in something of a "jam," and the four trainmen went to the top of the car, and proceeded to disengage pole and mast arm and wire. There was a tension on the trolley wire that had to be released. The event was not an unusual one in the operation of the train. The plaintiff was experienced, and had served as a motorman, prior to his service as brakeman, and he was familiar with the necessities of the situation. The result of the joint efforts of the trainmen was, first, to release the trolley wire. Either because the release was unexpected at that moment, or because the moment of release was untoward as to plaintiff's readiness for it, it resulted in throwing the plaintiff from the top of the car. As a result, he suffered a severe injury to his knee, causing him serious disability, which is quite permanent. The district court predicated decision upon two grounds. If we find either of them sustainable, we shall have

no need to consider the other. We proceed first to consider the question of negligence.

The petition specified no particular negligence. It charged that the plaintiff was injured through the negligent acts of his fellow servants. No particular act was charged as a negligence, nor did the petition specify which fellow servant was guilty of the alleged negligent acts. No attack was made upon the pleading, and we take it as it is, and look to the evidence.

The record discloses that plats and diagrams were used in evidence, and that these were lettered and numbered, and that the witnesses directed their testimony to these letters and numbers. Full comprehension of the testimony of the witnesses is not possible without reference to the lettered and numbered plats and diagrams before them. None of these are included in the abstract. We take, therefore, the language of the witnesses disassociated from these exhibits, to ascertain what we can therefrom. All the members of the train crew were called as witnesses for the plaintiff. He testified in his own behalf. The substantial part of his own testimony was as follows:

"When I got up there, I saw that two mast arms were down, and were hanging over the trolley. The trolley wire had not jerked loose from the mast arm. I don't know what was holding it up. One end of the mast arm was down. A mast arm is what reaches out from the pole and helps hold the wire out. When I got on top of the car, the mast arm was loose, and the end toward the pole was loose, and had been torn out of a base casting. It was loose, and I pulled this hog rod and wire below, and the mast arm was holding it up. The trolley was up where it always was. The place where the box car upon which I was standing was on a curve in the track, and the trolley arm had gone up and torn the mast arm down, and the trolley wire curved with the track. The trolley wire was still held there by the wire. I had hold of the wooden strain, so we could pull the trolley down. I suppose I know exactly what I was doing. I don't know which wooden strain I had hold of,—all I know is, we were trying to pull down on it, so Diamond could release the mast arm. We were all four up there, holding this down, so that Markley or so that Diamond could release the mast arm. I had hold of the wooden strain, pulling down on it. I put my weight on it. Markley and Muterspaw were do-

ing the same thing. I think Diamond stood right next to me. He was standing right by me. My hearing is good, my eyesight is good, and I know what we were up there for. We were up there to raise the mast arm, in order to *release the trolley wire*. Diamond was knocking the cotter key out with the hammer. I heard him hit more than one blow. He was standing close to me, and when he drove the cotter key out, instead of releasing the mast arm, it released the trolley wire, which swung into the curve, and knocked me off the car.''

There was no testimony more favorable to him than the foregoing. Diamond testified:

''And when we knocked that key out, the trolley sprung up, or sprung,—I don't know,—and that jerked Baird off the top of the car. The other men retained their hold on it. They did not get jerked,—Baird is the only one. I don't know what they [other men] done, but they did not get jerked off. * * * We were all debating on the matter of releasing the mast arm, and I called them up for that purpose. Markley and Muterspaw had hold of the mast arm, and Baird was the only one holding onto the trolley wire. The trolley wire and mast arm were connected at that time at the end. * * *''

''Cross-examination.

''When we got up there, we figured out the only way to get that mast arm—release the mast arm—was to knock that key out. Baird was right upon the car. We talked about it, and went to work. Baird was right there. I started to knock out the pin, to release the mast arm with hammer and punch. Hit it about three times. I suppose, being on the curve when I hit it, the wire flew out, the tension went out, and knocked Baird off the car. He was on the outer edge, pulling down on the wooden strain. The others had hold of the mast, which was pulled out at the base casting. Baird was dragged off. I don't know what jerked him off, or what did it.''

Similar testimony was given by the other witnesses. There was no material conflict in the testimony. It will be observed from the foregoing that none of the witnesses knew definitely just how or why the accident to plaintiff happened. There is nothing in the evidence which would relate the accident to the

act of one member of the party more than to that of another. If we were to say that the evidence was such as to suggest negligence on the part of somebody, yet such negligence would be as attributable to one as to any or all, and as attributable to the plaintiff himself as to his fellow servants. If it could be said, therefore, that the plaintiff had shown sufficient circumstances to warrant the finding of negligence on the part of somebody, he has, nevertheless, by such evidence, connected himself with the negligence as completely as he has connected his fellow servants therewith. We think, however, that a fair analysis of the record sustains the holding of the district court that the plaintiff failed to prove negligence of his fellow servants. We need go no further, therefore, in the consideration of the case.

The judgment below is, accordingly,—*Affirmed.*

MORLING, C. J., and FAVILLE, KINDIG, and GRIMM, JJ., concur.